UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KIAN FATEMI,

        Plaintiff,

   v.

NORTHLAND GROUP, INC,

        Defendant.

Case No. 3:15-cv-00371 -ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Kian Fatemi, filed this action against defendant, Northland Group, Inc., for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692e and § 1692f, by attempting to collect debts that he claims do not belong to him, but resulted from overseas credit card fraud and identity theft. Defendant has filed a Motion for Summary Judgment (docket #37) against all claims. For the reasons stated below, the motion should be granted in part and denied in part.

## STANDARDS

Summary judgment may be granted if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving

1 – FINDINGS AND RECOMMENDATION

party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999), citing *Summers v. A. Teichert & Son, Inc.* 127 F3d 1150, 1152 (9th Cir 1997). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989), quoting *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 249–50, 252 (1986). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000). The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011), citing *Delia v. City of Rialto*, 621 F3d 1069, 1074 (9th Cir 2010).

## FINDINGS

### I.   Background

Defendant is a company that collects delinquent accounts for third parties. Gruett Decl. (docket #39), ¶ 1.[1] Between November 2013 and January 2014, Cavalry SPVI, LLC ("Cavalry"), assigned to defendant for collection two delinquent Bank of America credit card accounts in plaintiff's name, among thousands of other accounts. *Id*, ¶¶ 4-6 & Ex. A, pp. 3-4. The first account ("2306 account") had an unpaid balance of $51,399.54; the second ("2764

---

[1] **Error! Main Document Only.**The parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit or declaration or to the page(s) of the deposition transcript.

account") had an unpaid balance of $16,578.32. *Id.* Defendant sent several validation letters to plaintiff as required by § 1692g of the FDCPA, some of which had the following instruction: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid." Swilley Decl. (docket #38), Ex. B, pp. 10-14. Plaintiff never responded to those letters. Fatemi Depo. (docket #38-2), p. 4. However, defendant immediately ceased all collection activities after plaintiff filed this action on March 4, 2015. Gruett Decl., ¶ 10.

Plaintiff claims that the debts on these accounts resulted from fraud associated with use of his credit card while traveling overseas. In 2008, plaintiff bought jewelry in India, but states he never received the goods and that the merchant added unauthorized charges to his credit card in addition to the cost of his purchase. Fatemi Decl. (docket #42), ¶ 2. Plaintiff disputed with Bank of America the unauthorized charges of $11,286.68, $13,293.20, and $5,894.16 from Ganesham Inc. made to the 2306 account. Swilley Decl., Ex. B, pp. 19-25. Initially, Bank of America credited plaintiff for those charges and informed him that it had requested information from the merchant to authenticate the charges. *Id*, Ex. B, pp. 28-33.

The merchant, Ganesham, Inc., responded to Bank of America's inquiry with a sales receipt for INR 276,000.00[2] charged to the 2306 account and a "Declaration Cum Receipt of Goods." *Id*, Ex. B, pp. 36-40. In order to maintain the credit, Bank of America required plaintiff to provide by August 21, 2008, an updated, signed letter stating that he still disputed the charges and information demonstrating that he did not receive the merchandise as promised. *Id*, Ex. B, pp. 36-37. On August 18, 2008, plaintiff responded with a letter stating he did not dispute doing business with Ganesham, Inc., but disputed that he had received the goods. *Id*, Ex. B, pp. 44-47. He claimed he had not received his goods by mail as promised and was still disputing a

---

[2] INR 276,000.00 is currently worth approximately $4,067.00.

$6,922.50 charge to his 2306 account which was "charged multiple times, for different amounts, beyond that of the original purchase price." *Id*, Ex. B, p. 45.[3] He also stated that he had information from the Indian bank that Ganesham Inc. may be a nonexistent company. *Id.* Nevertheless, Bank of America treated the $6,922.50 charge on the 2306 account as "due and payable," claiming it had not received "the information . . . requested within the specific time frame." *Id*, Ex. B, p. 56. On April 15, 2009, a letter from Bank of America informed plaintiff that the 2306 account was scheduled "to be written off as a bad debt" the following month. *Id*, Ex. B, p. 67.

## II.    FDCPA Violations

The FDCPA is a strict liability statute that regulates the conduct of third-party debt collectors. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F3d 1162, 1175–76 (9th Cir 2006). As defined by the FDCPA, plaintiff is a consumer, defendant is a debt collector, and defendant was attempting to collect a debt. 15 USC § 1691a(3), (6), & (5).

### A.    § 1692e

Plaintiff alleges that defendant violated § 1692e(2)(A) by sending out numerous validation letters on each account falsely representing the amount of his debts. Complaint, ¶ 15.

///

///

///

///

///

---

[3] There is no record of plaintiff continuing to dispute the other three charges ($11,286.68, $13,293.20, and $5,894.16) or initially challenging this $6,922.50 debt and receiving a credit. But plaintiff states that all unauthorized charges to accounts 2306 and 2764 "result[ed] from overseas fraud and identity theft." Fatemi Decl., ¶ 2.

4 – FINDINGS AND RECOMMENDATION

That statute provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> **(1)** The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.
>
> **(2)** The false representation of--
>
> **(A)** the character, amount, or legal status of any debt.

Defendant seeks summary judgment on this claim based on the lack of dispute over the amount of plaintiff's debt. It is difficult to discern what unauthorized charges (or authorized charges for goods plaintiff never received) made up the two assigned debts. The 2306 account, which is the only account that the record reflects plaintiff disputed with Bank of America, included an authorized charge of INR 276,000.00 and three or four unauthorized charges. In total, these charges do not appear to equal the debt assigned on this account ($51,399.54), and there is no indication of which charges plaintiff paid to reduce his balance to the remaining debt. As for the 2764 account, there is no documentation of whether the $16,578.32 outstanding balance was the result of unauthorized charges or undelivered goods.

Nonetheless, plaintiff states in his declaration his "Bank of America accounts were the subject of unauthorized charges resulting from overseas fraud and identity theft." Fatemi Decl., ¶ 2. This statement is inconsistent with plaintiff's written statements to Bank of America that charges of INR 276,000.00 to the 2306 account were authorized but disputed because he never received the goods. However, it is reasonable to infer from plaintiff's declaration, as the court

5 – FINDINGS AND RECOMMENDATION

must do so in favor of the non-moving party, that plaintiff disputed the entire amount of all debts that defendant attempted to collect as the result of fraud.[4]

Plaintiff argues that defendant made a false and misleading statement by representing his Bank of America accounts as due when the underlying debt was fraudulent. In response, defendant cites this court's recent opinion in *Story v. Midland Funding LLC*, Civ. No. 3:15-cv-001940-AC, 2015 WL 7760190 (D Or Dec 2, 2015), as support for the theory that a debt collector is shielded from liability under § 1692e if its collection efforts complied with the validation procedures in § 1692g. As in this case, the § 1692e claim in *Story* relied on the premise that attempting to collect a debt that the consumer does not actually owe is false, misleading, or deceptive. *Id* at *6. The court concluded that being pursued for a debt that a consumer does not owe is not sufficient in and of itself to make out a claim of false and misleading representations under § 1692e. *Id.* Although the court did not cite Ninth Circuit authority, it cited several other district court decisions reaching the same conclusion.

Plaintiff urges this court to reject *Story* as contrary to decisions by other district courts holding that a debt collector's demand for payment of a debt that a consumer does not owe violates the plain text of the FDCPA regardless of whether defendant followed the validation procedures in § 1692g. However, plaintiff confuses his standing to bring a claim under FDCPA with the merits of his claim. The cases he cites, *Davis v. Midland Funding, LLC*, 41 F Supp3d 919, 925 (ED Cal 2014) and *Collins v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-138, 2013 WL 9805805, at *4 (ED Tenn June 7, 2013), confirm only that a victim of identity theft or other fraud is not omitted from the class of consumers who enjoy protection under the FDCPA.

---

[4] Plaintiff also believes that he owes Bank of America "no more than $50 on the accounts at issue based on the Fair Credit Billing Act." Fatemi Decl., ¶ 4.

6 – FINDINGS AND RECOMMENDATION

Even so, plaintiff's § 1692e claim is based not only on defendant's conduct of sending validation letters, but also on a report in defendant's file revealing that plaintiff had previously disputed his debts. Defendant's file contained a "credit summary" from a credit reporting agency (Experian) with the following notation underneath the credit score: "Number of Disputes: 2." Fatemi Decl., ¶ 8 & Ex. 3, p. 3; Gruett Depo. (docket #38-3), p. 39.[5] It also includes a notation on the first page that reads: "Fraud Alert 4: Y." Fatemi Decl., Ex. 3, p. 1. Defendant's FRCP 30(b)(6) witness testified that it does not look at this section of the report when loading the file. Gruett Depo., p. 59.

Defendant argues that this abridged credit summary has no clear meaning and would not alert it to the existence of a disputed debt. However, defendant's representative testified that there was a "[v]ery well probability" [*sic*] that one of its employees had seen the notations before learning plaintiff filed this lawsuit. *Id*, p. 61. Based on the language of the notations, a reasonable person reading the notations could well be placed on notice of some dispute or fraud associated with the account. The notations on the credit report also are corroborated by plaintiff's declaration that he had disputed the unauthorized charges with Bank of America, the credit reporting agencies, the debt collectors, and Cavalry. Fatemi Decl., ¶ 5.

This level of factual specificity was lacking in *Story*. The complaint in *Story* alleged only that the debt collector attempted to collect a debt that it "knew or should have known" did not belong to the plaintiff. *Story*, 2015 WL 7760190, at *5. The court dismissed the plaintiff's claim on a motion to dismiss because the plaintiff had failed to adequately plead any false representations. *Id* at *6-7. In contrast here, after conducting discovery, plaintiff has presented evidence that defendant may have known of his dispute with Bank of America based on the abridged credit report before it sent any collection letters to plaintiff.

---

[5] In his declaration, plaintiff refers to Exhibit 15, which is attached as Exhibit 3. Fatemi Decl., ¶ 8.

Therefore, the issue is whether the statements on the collection letters render them misleading under § 1692e given defendant's alleged knowledge of plaintiff's prior disputes. A false statement violates the FDCPA if it "may frustrate a consumer's ability to intelligently choose his or her response." *Donohue v. Quick Collect, Inc.*, 592 F3d 1027, 1034 (9th Cir 2010). "In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law.' The analysis is objective and 'takes into account whether the least sophisticated debtor would likely be misled by a communication.'" *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F3d 1109, 1119 (9th Cir 2014), *as amended on denial of reh'g and reh'g en banc* (Oct 31, 2014), quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F3d 1055, 1061 (9th Cir 2011).

Nothing in defendant's letters actually asserted the legal status of plaintiff's debt. Rather, they merely informed plaintiff that the 2036 and 2764 accounts had been assigned to defendant for collection, that Cavalry was willing to reduce the balance for settlement, and that plaintiff could dispute the validity of the debt within 30 days. Swilley Decl., Ex. B, pp. 10-14. At least to a certain extent, these statements were true. Plaintiff had received letters from Bank of America treating a charge of $6,872.50 on the 2306 account as valid and sending the unpaid balance for collection. However, defendant's letters refer to past due account balances different than those reflected by those letters and also referred to the 2764 account, which may well have frustrated plaintiff's ability to intelligently choose his response.

The record may not be complete as to all the facts. However, given the current state of the record, a genuine issue of material fact exists whether the defendant's action of sending the letters mispresented its alleged knowledge that some or all of the accounts were disputed in violation of § 1692e.

///

8 – FINDINGS AND RECOMMENDATION

B.   **§ 1692f**

Defendant also seeks summary judgment on plaintiff's claim under § 1692f(1) because it was authorized by § 1692g of the FDCPA to send validation letters regardless of whether the debt was fraudulent.

Plaintiff argues that a debt collector is strictly liable under § 1692f(1) for attempting to collect a fraudulent debt. That statute provides as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Again, the premise of plaintiff's claim is that defendant attempted to collect the debt that it knew or should have known was invalid based on the existence of an abridged credit report from a credit reporting agency in defendant's file showing that plaintiff's debts were disputed.

Defendant claims that this is not the typical § 1692f case in which the plaintiff challenges unauthorized amounts added by defendant to the principal of the debt. *See, e.g., McCollough v. Johnson, Rodenberg & Lauinger, LLC*, 637 F3d 939 (9th Cir 2011) (adding attorney fees not authorized by contract); *Reichart v. Nat'l Credit Sys., Inc.*, 531 F3d 1002 (9th Cir 2008) (adding collection charge not authorized by lease). Although defendant cites no authority expressly limiting § 1692f(1) to amounts added to the debt, plaintiff makes no argument to the contrary. Based on a plain reading of this statute, this court agrees with defendant's interpretation. Including the debt itself in § 1692f(1) adds an unnecessary redundancy to the FDCPA, given that a debt collector is liable under § 1692e for collecting a debt based on a false representation as to the amount due. Therefore, defendant is entitled to summary judgment against this claim.

### III. <u>Bona fide error defense</u>

Defendant also seeks summary judgment on its affirmative defense under the FDCPA. The bona fide error defense exempts a debt collector who "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 USC § 1692k(c). "Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough*, 637 F3d at 948. Plaintiff does not dispute that defendant collected the debt unintentionally, but contends that fact issues exist as to the remaining two elements.

Defendant argues that it maintains procedures to avoid collecting a fraudulent debt which include sending an initial letter giving 30 days for the consumer to dispute the debt as well as ceasing all collection activity and returning the account to the client upon receipt of any dispute. Gruett Decl., ¶ 8. However, these procedures are calculated to prevent defendant from continuing to collect the debt. The specific error alleged by plaintiff is that defendant began collection of the debt by sending the validation letter despite evidence in its file the Cavalry had made a mistake and assigned defendant a disputed debt.

A debt collector's procedures must be "reasonably adapted to avoid the specific error at issue," which means that the "procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." *Reichert*, 531 F3d at 1007. This requires a showing of a nexus between the procedures and the errors, such as redundancies or safeguards "to catch the stunning employee errors." *See Webster v. ACB Receivables Mgmt., Inc.*, 15 F Supp3d 619, 629 (D Md 2014). Although defendant's arrangement with Cavalry may be

successful in keeping the number of mistakenly-assigned debts to 0.00001% (according to defendant's calculation), defendant has submitted no evidence of any procedure to safeguard the consumer whose disputed debt is assigned and, as a result, is contacted by a debt collector. For example, the record contains no evidence of any procedure for an agent to look at the "credit summary" section of the abridged credit report showing the number of disputes associated with an account.

Defendant also argues that it was reasonable to rely on the validity of debts assigned by Cavalry because of its long relationship as a client. The bona fide error defense "does not protect a debt collector whose reliance on a creditor's representation is unreasonable." *McCollough*, 637 F3d at 948, quoting *Reichert*, 531 F3d at 1006. Cavalry has been a client of defendant for approximately six years and has placed millions of accounts with defendant. Gruett Decl., ¶ 3. The Agency Network Handbook, which reportedly represented the agreement between Cavalry and defendant, contained a section regarding uncollectable accounts that read:

> Subject to termination of this Agreement by either party, all Accounts placed for collection with [defendant] shall be retained and collected by [defendant] unless returned to [Cavalry] as uncollectable or recalled. . . . [A]n account shall be returned to [Cavalry] upon the discovery by [Cavalry] or [defendant] of any of the following . . . (b) any debtor related to such Account has disputed such Account.

Swilley Decl., Ex. C, p. 29.

This agreement does not contain a warranty from Cavalry that all assigned debts are valid. Nonetheless, defendant argues that it could reasonably rely on Cavalry to assign only valid debts, citing *Hyman v. Tate*, 362 F3d 965 (7th Cir 2004). In *Hyman*, the Seventh Circuit found that the debt collector had reasonable procedures to avoid collecting bankrupt accounts based on the testimony of the debt collector's manager that it had "an understanding" with its client not to refer accounts in bankruptcy. *Id* at 967. Defendant's FRCP 30(b)(6) witness

11 – FINDINGS AND RECOMMENDATION

testified that because defendant's agreement required Cavalry to recall any uncollectable debts, they had an "understanding" that "it would not make sense to place [disputed debts] with us." Gruett Depo, pp. 30-31.  However, plaintiff casts doubt on the credibility of this testimony because it uses exactly the same wording ("understanding") as in *Hyman* and appears to be based only on Cavalry recalling a debt if it becomes aware of a dispute.[6]  *Id*, pp. 20-21, 26, 30-31.  That is a different understanding than in *Hyman* not to refer accounts in bankruptcy in the first place.  Given the ambiguity of the testimony, it is a slim reed on which to base summary judgment.

Regardless of the credibility of this testimony, defendant also argues that its reliance is reasonable because it makes no commission on the collection of a disputed debt and, therefore, has no motivation to attempt to collect a disputed debt.  That assertion fails to present evidence of an "understanding," whether explicit or implicit, between defendant and Cavalry that disputed debts would not be assigned.

At this juncture, based on the undisputed facts, defendant is not entitled to summary judgment on its bona fide error defense.

## RECOMMENDATION

For the reasons stated, defendant's Motion for Summary Judgment (docket #37) should be granted in part as to the alleged violation based on § 1692f and otherwise should be denied.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, February 29, 2016.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

---

[6] Plaintiff also argued that the witness first mistakenly testified that defendant's agreement with Cavalry contained a written warranty and then changed his testimony after taking a break to talk with defendant's attorneys. However, the portions of the deposition transcript submitted by the parties do not support this argument.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED February 11, 2016.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge

13 – FINDINGS AND RECOMMENDATION